IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

BENNY N. MARZULLO,

    Petitioner,

v.                                           CASE NO. 5:06-cv-27-SPM-AK

JAMES R. MCDONOUGH,

    Respondent.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Doc. 1, Petition for Writ of Habeas Corpus, filed by Benny N. Marzullo. Petitioner was granted leave to proceed IFP. The original petition is dated January 24, 2006.

Petitioner was convicted of manslaughter, and on November 23, 1998, he was sentenced to thirty years imprisonment as an habitual violent felony offender and as a prison releasee reoffender. Doc. 14, Ex. A at 100-08. He appealed, and his conviction and sentence were affirmed on December 16, 1999. *Marzullo v. State*, 791 So.2d 1 (Fla. D. Ct. App. 1999). As it had in *Woods v. State*, 740 So.2d 20 (Fla. D. Ct. App. 1999), the court certified the following question to the Florida Supreme Court: "Does the Prison Reoffender Punishment Act...violate the separation of powers clause of the Florida Constitution?" *Id*. At that time, review in *Woods* had been granted by the Florida Supreme Court and was pending decision. *Woods v. State*, 740 So.2d 529 (Fla. 1999); Doc. 14, Ex. G.

On December 22, 1999, Petitioner's appellate counsel wrote him a letter, advising him that his conviction and sentence had been affirmed and that if the court stayed the issuance of the mandate pending a decision on the certified question, counsel could "do nothing further for [him]."  Doc. 20, Ex. A.  He also enclosed a copy of Rule 3.850 and explained to Petitioner that he had "two years from the date the First District Court of Appeals' decision becomes final to file that motion.  Their opinion becomes 'final' when they issue their mandate, something they have not done yet." *Id*.  The next day, on December 23, 1999, the State moved to stay issuance of the mandate in the court of appeal, "[i]n the interest of judicial efficiency," until the Florida Supreme Court issued a decision in *Woods*.  Doc. 14, Ex. G.  The court granted the motion to stay, extending the time for filing a motion for rehearing "to 15 days after the decision of the Supreme Court in *Woods*...becomes final."  Doc. 14, Ex. H.

On June 9, 2000, Petitioner's counsel again advised Petitioner that he could not file a 3.850 motion until the Florida Supreme Court had ruled on the certified question.  Doc. 20, Ex. B.  Specifically, counsel stated:  "[U]ntil [*Woods*] has been resolved there is nothing you can do." *Id*.

On August 26, 2000, Petitioner filed a petition for writ of habeas corpus in the court of appeal, seeking a belated appeal based on ineffective assistance of appellate counsel.  Doc. 14, Ex. K.  On September 14, 2000, the Florida Supreme Court finally issued its decision in *Woods*

following denial of rehearing. *Woods v. State*, 769 So.2d 345 (Fla. 2000).[1]  The *Woods* opinion is actually dated June 15, 2000, a fact referenced in Petitioner's state habeas motion.  Doc. 14, Ex. K at 5.  In his habeas motion, Petitioner more specifically stated:

> The Florida Supreme Court has not yet ruled on the certified question in this case, however, the Supreme Court has answered the same question in the negative in Woods v. State. 25 Fla. L. Weekly S463 (Fla. 2000).  Petitioner's claims and issues have nothing to do with the pending ruling on the certified question, which will surely be answered in the negative.

*Id*.  Thus, at the time that Petitioner filed his habeas petition in state court in August, 2000, he was fully aware that a decision had been reached in the *Woods* case which was adverse to his interests, and at no time thereafter did he seek rehearing in his own case.  *See* Doc. 14, Ex. J.

On October 2, 2000, Several weeks after rehearing was denied in *Woods*, the court denied Petitioner's habeas request.  *Marzullo v. State*, 773 So.2d 542 (Fla. D. Ct. App. 2000). On November 16, 2000, it subsequently denied rehearing.  Doc. 14, Ex. M.

On June 21, 2001, in response to Petitioner's letter, the clerk of the court of appeal erroneously advised Petitioner that it was still "awaiting a decision from the Supreme Court in Woods vs. State."  Doc. 20, Ex. C.  Petitioner knew, however, that this was incorrect.  See Doc.

---

[1] With regard to the certified question, the *Woods* court initially found that "at least to the extent that the [Prison Releasee Reoffender Punishment] Act is properly construed to establish a mandatory minimum sentence," it removes "'all (or substantially all) sentencing discretion from the judicial branch, placing it, instead, in the executive branch.'" *Woods*, 769 So.2d at 347.  The court then concluded: "Because the 'exception discretion' provision is otherwise subsumed by the State's broad, underlying prosecutorial discretion, we hold that the Act, which establishes a mandatory minimum sentencing scheme, is not unconstitutional on its face as violative of separation of powers principles." *Id*. at 354.  The supreme court therefore answered the question certified in *Woods*–and thus, in Petitioner's case–in the negative, thereby approving the lower court decision.

14, Ex. K.

Almost three months after Petitioner's inquiry, the court of appeal finally issued the mandate disposing of Petitioner's direct appeal. Doc. 20, Ex. D & E. The mandate is dated August 24, 2001.

On January 18, 2002, Petitioner filed a Rule 3.850 motion, which was denied after evidentiary hearing. Doc. 14, Ex. N at 358-414 & 758-63. Petitioner appealed that decision. While the appeal was pending, Petitioner filed a second petition for writ of habeas corpus, alleging ineffective assistance of counsel. Doc. 14, Ex. S. The petition was denied as successive and procedurally barred on August 11, 2005. *Marzullo v. State*, 908 So.2d 1144 (Fla. D. Ct. App. 2005). The next day, the court of appeal affirmed the denial of the Rule 3.850 motion. *Marzullo v. State*, 911 So.2d 104 (Fla. D. Ct. App. 2005). The mandate issued on October 5, 2005. Doc. 14, Ex. R.

As previously noted, the instant petition is dated January 24, 2006. Respondent was directed to file a response, and it has filed a motion to dismiss on the basis that the petition is untimely. Doc. 13 at 4. According to Respondent, Petitioner's conviction became final on the date that rehearing was denied in *Woods*, September 14, 2000, since Petitioner never sought rehearing after that time. *Id*. at 5. In Respondent's view, when Petitioner is given the 90 days for seeking certiorari in the United States Supreme Court, he had one-year from December 13, 2000, to file his habeas corpus petition in this Court. *Id*.

In reply, Petitioner argues that his conviction did not become final until November 22, 2001, ninety days after the issuance of the mandate on his direct appeal. Doc. 20 at 3. According to him, only 170 days of "untolled time elapsed between the finality of his state direct appeal and the filing of the instant federal habeas petition." *Id*. at 4. He further contends that at the very least he is entitled to equitable tolling or a finding that there was a state impediment to a timely filing based on the instructions both from appointed appellate counsel and the appellate court clerk which "undoubtedly...served to mislead him into believing that he could not file a postconviction motion until after August 24, 2001, when *Woods* was resolved in the Florida Supreme Court and Marzullo's mandate was issued on his direct appeal." *Id*. at 5.

**DISCUSSION**

Section 2254 petitions are subject to a one-year statute of limitations. 28 U.S.C. § 2244(d)(1). This limitations period runs from the latest of the following: the date on which the state court judgment became final; the date on which an unconstitutional impediment which prevented the applicant from filing is removed; the date on which the right asserted was recognized by the United States Supreme Court and made retroactive on collateral review; or the date on which the factual predicate for the claim could have been discovered by due diligence. 28 U.S.C. § 2244(d)(1)(A)-(D).

There is no doubt that Petitioner's calculation regarding the date of finality is incorrect, as the date for seeking a writ of certiorari to the United States Supreme Court "runs from the date of entry of judgment or order sought to be reviewed, and not from the issuance date of the

Case 5:06-cv-00027-SPM-AK   Document 26   Filed 07/10/07   Page 6 of 8

*Page 6 of 8*

mandate (or its equivalent under local practice)." Sup. Ct. R. 13.3.  While Petitioner certainly could not have filed his Rule 3.850 motion in state court until the issuance of the mandate, as his attorney told him, the same is not true with regard to seeking habeas relief in this Court.  In the usual case, the statute of limitations would have begun running ninety days after the issuance of the direct appeal decision, or March 16, 2000, *Nix. v. Secretary for Department of Corrections*, 393 F.3d 1235 (11th Cir. 2004), with the time being tolled during the pendency of a properly filed motion for post-conviction relief.

This is not, however, a usual case, as the decision on Petitioner's direct appeal was stayed pending the resolution of *Woods*, with the court providing for the filing of a motion for rehearing after the issuance of the *Woods* decision.  Thus, the Court believes that the proper touchstone for determining the commencement of the statute of limitations in this case is "15 days after the decision of the Supreme Court in *Woods*...[became] final," Doc. 14, Ex. H, i.e., September 29, 2000, since Petitioner did not file a motion for rehearing.  When the 90-day period for seeking certiorari is added to that date, Petitioner's conviction became final on December 28, 2000.  Petitioner therefore had one year from that date to file the instant petition.

Between December 28, 2000, and January 18, 2002, when Petitioner filed the 3.850 motion, Petitioner had nothing pending in state court which could operate to toll the running of the statute of limitations.  In this Court's view, Petitioner can garner no relief from the erroneous information provided by the clerk of the court of appeal, as it is well documented that he himself knew long before that information was dispensed that the decision in *Woods* had in fact been

issued.

Furthermore, to the extent that Petitioner's attorney addressed the issue of state court post-conviction relief, his advice was correct. Counsel's communications never addressed the filing of federal habeas relief in this Court, and the question becomes whether this constitutes extraordinary circumstances that were both beyond Petitioner's control and unavoidable even with the exercise of diligence so as to entitle him to equitable tolling of the one-year statute of limitations. *See Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999) (to qualify for equitable tolling, petitioner must show extraordinary circumstances that are both beyond his control and unavoidable even with diligence); *see also Akins v. United States*, 204 F.3d 1086, 1089 (11th Cir. 2000). Having carefully considered the matter, the Court answers that question in the negative. It is of no consequence that the State statute allows a prisoner two years to seek post-conviction relief, and counsel's advice regarding the deadline for seeking relief in state court does not operate as extraordinary circumstances which would excuse Petitioner's untimely filing in this Court. *Cf. Helton v. Secretary for Department of Correction*, 259 F.3d 1310, 1313 (11th Cir. 2001) (counsel's erroneous advice regarding filing deadline does not constitute extraordinary circumstances). A minimum amount of research or inquiry would have revealed that the statute of limitations for seeking relief in this Court is one year, not two years as allowed under state law, and indeed, this is a common mistake made by prisoners. *See Moore v. Crosby*, 321 F.3d 1377, 1381 (11th Cir. 2003) (tolling provisions do not restart statute of limitations once limitations period has expired); *Tinker v. Moore*, 255 F.3d 1331, 1333 (11th Cir. 2001), *cert.*

*denied*, 534 U.S. 1144 (2002).

Thus, in this Court's view, the instant petition should be dismissed as untimely.

## CONCLUSION

In light of the foregoing, it is respectfully **RECOMMENDED** that Respondent's motion to dismiss, Doc. 13, be **GRANTED**, and this cause be **DISMISSED WITH PREJUDICE** as untimely.

**IN CHAMBERS** at Gainesville, Florida, this  10th    day of July, 2007.

s/A. Kornblum
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**